CITIZENS BANK OF MINOT, a Corporation, Respondent, v. THEODOROS MOURATIS, George Maragos, and Alek Pedas. GEORGE MARAGOS and Alek Pedas, Appellants.

(233 N. W. 842.)

Opinion filed December 23, 1930.

*Sinkler & Brekke,* and *F. J. Funke,* for appellants.

*B. H. Bradford,* for respondent.

NUESSLE, J. This action was begun in April, 1926, to foreclose a chattel mortgage executed by the defendants Mouratis, Maragos and Pedas, securing a note executed by the said defendants to the plaintiff. The defendants Mouratis and Pedas answered, setting up an agreement whereby and in consideration of the assignment by them to the plaintiff of a certain note and mortgage executed by the defendant Mouratis, the plaintiff released them from liability on the note secured by the mortgage in suit. However, when the case was called for trial they defaulted and judgment of foreclosure was entered. Pursuant to said judgment the mortgaged property was sold. The proceeds of the sale, however, were not sufficient to satisfy the claim and a deficiency judgment was entered. Thereafter the defendants Maragos and Pedas applied to the court to vacate the judgment against them and grant them leave to prove the defense set out in their answers. This motion was granted and the judgment was vacated as to Maragos and Pedas. The case again came to trial on the issues as thus pre-

sented. It was tried to the court without a jury. The court made findings of fact favorable to the plaintiff and ordered judgment accordingly. From this judgment the defendants Maragos and Pedas appeal.

As we read the record, the facts are substantially as follows: Peter Ehr, the president of the respondent bank, owned a hotel building in Minot. Manson Brothers had a lease on a portion of the building and operated a cafe and confectionery store therein. In 1922, Manson Brothers sold out to the appellant Maragos and one Andros, assigning their lease to the purchasers. As a part of the purchase price, Maragos and Andros executed a note for $8,500, secured by chattel mortgage on the personal property consisting of the cafe fixtures and equipment so bought. Thereafter Manson Brothers assigned this note and mortgage to the respondent. Some payments were made thereon but at the time of the trial of this action a large sum remained unpaid on this indebtedness. Some time (about eight months) after this note was given, Andros withdrew from the business and Mouratis, Maragos and Pedas, having entered into a partnership agreement for that purpose, took it over, apparently assuming and agreeing to pay the outstanding indebtedness. On December 1, 1924, these parties then operating the business, executed the note secured by the mortgage sought to be foreclosed in this action. The note was given for the purchase price of, and the mortgage covered, certain personal property, fixtures and equipment, used in carrying on the business. The note was due May 1, 1925. On June 2, 1925, Maragos and Pedas sold out their interests in the partnership business to Mouratis who agreed to assume and pay all the partnership obligations. They executed a bill of sale of the personal property and fixtures to Mouratis and in turn took from him a mortgage covering the same. The bill of sale was dated June 2, 1925, and was filed in the office of the register of deeds on October 5, 1925, and the mortgage dated June 23, 1925, was filed on August 19, 1925. Between the time of the purchase of the business from Manson Brothers and June 1, 1925, considerable money had been expended in the making of improvements and in the purchase of fixtures and equipment. These fixtures and equipment were designed for use in carrying on the business of the cafe and had a special value to the owner of the hotel building on that account which they would not have for

anyone else.  The mortgage given by Mouratis at the time of his purchase of the business was to Maragos alone, as were the notes which it secured.  Maragos indorsed a portion of these notes over to Pedas. The mortgage covered all of the personal property acquired subsequent to the purchase of the business from Manson Brothers.  The more valuable items of the later acquired property, however, had been bought on contract and were not fully paid for.  On October 14, 1925, Mouratis executed a note to the respondent for over $5000, secured on all of the fixtures and equipment used in the cafe business, including the personal property covered by the mortgage executed to Maragos. In December of 1925, or January, 1926, Maragos indorsed the Mouratis notes to the respondent bank and at the same time executed an assignment and also a release of the mortgage securing the same.  The note executed by Mouratis, Maragos and Pedas to the respondent, due May 1, 1925, and secured by the mortgage which the respondent is seeking to foreclose in this action, was twice renewed subsequent to June 1, 1925.  Maragos signed these renewal notes but Pedas refused to do so.  Mouratis was in financial straits, and in March, 1926, he was sued by another creditor.  His property was attached and the business was closed.  Thereafter he filed a voluntary petition in bankruptcy, was adjudged a bankrupt on November 28, 1928, and subsequently discharged as such.

At the time the attachment was levied in the suit against Mouratis, the situation as among the parties to the instant action was as stated by the appellants in their brief (and for the purposes of this opinion we may adopt it as correct) as follows:  "The respondent held a mortgage, superior to the mortgage of the appellants, upon all of the property which the defendants purchased from Manson Brothers.  Appellants held a mortgage, superior to any mortgage of the respondent, upon all of the equipment and improvements placed in the said property by the defendants.  The appellants, however, were liable to the respondent upon the notes assumed by Mouratis, including the one involved in this action. . . . Thus  .  . .  the respondent had a first mortgage on the property purchased from Manson Brothers, the appellants had a first mortgage on the equipment and improvements put in after the purchase from Manson Brothers, and the respondent

held a subsequent mortgage on all of the property, including that which was included in its first mortgage."

On the trial of the case, in conformity with the defense set up in their answers, the appellants Maragos and Pedas testified that they had transferred the notes executed by Mouratis to Maragos to the respondent bank in consideration of the bank's agreement to release them from liability on the note in suit. This was denied by the respondent. Respondent's evidence with respect to the matter was to the effect that when Ehr, the respondent's president, discovered that the cafe fixtures and equipment had been transferred by bill of sale to Mouratis and that Mouratis had mortgaged the same back to Maragos and Pedas, Ehr objected. He insisted that these transactions prejudiced the respondent's rights under the mortgages which it had and that Maragos must either assign the note and mortgage to the bank as collateral or release the mortgage; that in accordance with this demand Maragos executed an assignment and release of the mortgage in question with the understanding that either might be used by the respondent at its option. With respect to the renewal notes signed by Maragos, after he had sold out to Mouratis in June, 1925, Maragos testified that he signed the same for the accommodation of the bank in order that the notes might be used as collateral. On the other hand, respondent denied that this was the reason for the signing of these notes.

The trial court, finding in accordance with the respondent's theory of the case that there was no accord (see § 5825, Comp. Laws 1913), therefore held that the appellants were not released from liability on the note in suit and ordered judgment against them for the amount remaining unpaid on the claim after crediting thereon the proceeds of the foreclosure sale. We have carefully examined and considered the whole record and have come to the conclusion that the finding of the trial court with respect to the transaction between the respondent and Maragos and Pedas must be sustained. After the trial of the action and before the appeal was perfected, numerous exhibits that had been offered and received in evidence, including the notes and mortgages incidentally involved, were misplaced or lost. The parties have stipulated as to the tenor and effect of these instruments, but this court is deprived of the advantage which would arise from an examination of them. The evidence is in many other respects unsat-

isfactory. But it is certain that Maragos and Pedas were indebted to the respondent in a large amount, both on account of the note in suit and on account of the note to Manson Brothers which they had assumed. The mortgage which the appellants had taken from Mouratis, covered, it is true, personal property not included in the respondent's prior mortgage, but the more valuable articles of this personal property were not wholly paid for. Subsequently these articles were taken on foreclosure of purchase price mortgages or conditional sales contracts and sold to satisfy the same. There are many inconsistencies and contradictions in the record but the respondent's theory as to the facts is much more reaonable and probable than the appellants. It is hardly credible that the respondent would release the appellants, who were apparently solvent and responsible, from their obligations in consideration of the transfer to it of the $2800 note of Mouratis, who already was largely indebted to the respondent and in sore financial straits, and its more or less doubtful security. Though the judgment must be affirmed, we are unable to approve and adopt the first finding of fact of the trial court and his conclusions predicated thereon with respect to the amount remaining unpaid on the other obligations of the appellants Pedas and Maragos to the respondent. Though there was an indebtedness, the amount thereof cannot be definitely determined from this record. In any event, the amount of such indebtedness is immaterial in this action except as it tends to substantiate one or the other theories of the parties with respect to the question of release.

The judgment is affirmed.

BURKE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.